UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Amber Dunford, | ) | |
| Plaintiff, | ) | **2:14-cv-02304 JWS** |
| vs. | ) | **ORDER AND OPINION** |
| Bankers Life and Casualty Company, | ) | **[Re: Motion at Docket 40]** |
| Defendant. | ) | |

## I.  MOTION PRESENTED

At docket 40, Defendant Bankers Life and Casualty Company ("Bankers" or "Defendant") filed a motion asking the court to grant summary judgment in its favor as to the breach-of-contract action filed by Plaintiff Amber Dunford ("Plaintiff"). Defendant's statement of facts and supporting documents are filed at docket 41, with a sealed exhibit filed at docket 43.  Plaintiff responds at docket 45, with her statement of facts and supporting documents at docket 45.  Defendant replies at docket 49 and includes a response to Plaintiff's statement of facts at docket 51.  Oral argument was heard on August 22, 2016.

## II.  BACKGROUND

Plaintiff's breach-of-contract claim against Bankers stems from its rescission of a life insurance policy it issued on the life of Tyler Dunford ("Tyler"), Plaintiff's now-deceased husband (Plaintiff and Tyler are collectively referred to as "the Dunfords").

1  Plaintiff married Tyler in November of 2012 and shortly thereafter began looking for life
2  insurance for her husband.  At the time, she was aware that Tyler had previous DUIs
3  and was on house arrest, and she knew that her husband had suffered a broken back.
4  She filled out an application with two other insurance companies and disclosed her
5  husband's known history and was denied.  Plaintiff alleges that she was referred to
6  Bankers' agent and employee Clifton McGee ("McGee").  She was told that he would
7  issue life insurance to people with "histories."  Plaintiff spoke to McGee on the
8  telephone and alleges that she disclosed Tyler's history of DUIs and his prior back
9  fracture.  She alleges that she disclosed that they had been denied by other insurance
10 companies.

11     McGee met with the Dunfords in February of 2013.  Plaintiff alleges she was
12 present for the entire meeting, save for a few moments when she went to get her
13 checkbook.  McGee filled out applications on behalf of the Dunfords for a $300,000
14 term life policy and also a temporary $25,000 whole life policy to cover the Dunfords
15 while the application for the term life policy was pending.  Plaintiff alleges McGee did
16 not ask them the qualifying questions on the applications and instead told them that he
17 believed "everybody deserves a second chance."[1]  The qualifying questions included
18 questions about whether Tyler had ever had a DUI, whether he had been denied
19 insurance in the past, whether he had undergone any surgery or consulted with a
20 doctor within the last five years, whether he had used drugs, and whether he had a
21 history of depression.[2]  All of the qualifying questions on the application were marked
22 "no."[3]

23     The application for the term life policy required a paramedical examination as
24 well.  The exam took place in March of 2013 and was conducted by a paramedical

25

26     [1]Doc. 45-2 at p. 11 (Amber Dunford depo. p. 41).

27     [2]Doc. 41-3 at pp. 12-13 (Exhibit C-3, pp. 28-29).

28     [3]*Id.*

-2-

professional working for a different company, EMSI.  Neither Plaintiff nor McGee was present for the exam.  As part of the examination, the paramedical examiner used a questionnaire provided by Bankers to question Tyler about his health history.[4]  The questionnaire indicates that Tyler denied drinking alcoholic beverages, denied using heroin, morphine, or other narcotics, denied a mental health history, and did not reveal his prior back injury.  Tyler signed and dated the form.

The term policy was issued on April 1, 2013.  Plaintiff received the policy on April 11, 2013.  Tyler died in an accident in early May of 2013, and Plaintiff filed a claim for life insurance with Bankers.  As a result of its investigation into the claim, Bankers obtained Tyler's medical and criminal records and discovered that Tyler's recent history included not only DUIs and a broken back, which Plaintiff alleges had been disclosed to McGee, but also a history of alcohol and drug dependency, abuse, and treatment, as well as a history of anxiety, depression, and suicide attempts.  Plaintiff only learned about Tyler's drug and mental health history as a result of Bankers' investigation and confirms that this additional history was not disclosed to McGee.  Bankers rescinded the term life policy in December of 2013 based on Tyler's material misrepresentations about his health and criminal history.  Plaintiff thereafter filed this action for breach of contract.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5]  The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[6]  Ultimately, "summary judgment will not lie if the . . . evidence is such that a

---

[4]Doc. 41-3 at pp. .47-50 (Exhibit C-3, pp. 32-35).

[5]Fed. R. Civ. P. 56(a).

[6]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

reasonable jury could return a verdict for the nonmoving party."[7]  However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[8]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[9]  Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[10]  Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[11]  All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[12]  However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[13]

## IV.  DISCUSSION

Bankers argues that its rescission of the insurance policy was proper under the policy and A.R.S. § 20-1109 because Tyler concealed and misrepresented his criminal

[7]*Id.*

[8]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[9]*Id.* at 323.

[10]*Id.* at 323-25.

[11]*Anderson,* 477 U.S. at 248-49.

[12]*Id.* at 255.

[13]*Id.* at 248-49.

1   and medical history during the application process.  The statute relied on by Bankers

2   provides, in relevant part, that a misrepresentation, omission, or concealment of facts in

3   an insurance application cannot prevent recovery under the policy unless: (1) it is

4   fraudulent; (2) it is material to the acceptance of the risk; and (3) the insurer would not

5   have issued the policy or provided coverage if the "true facts had been made known to

6   the insurer."[14]  The insurance company must prove each of the three elements before

7   rescission is allowed.[15]  Based on the underwriting guidelines provided in the record,

8   Plaintiff does not contest that Tyler's non-disclosed criminal and medical history would

9   have been material to Bankers's acceptance of risk and that Tyler would not have

10  ordinarily been eligible for his life insurance policy under Bankers's underwriting

11  guidelines.[16]  Plaintiff nonetheless contends summary judgment is not appropriate and

12  Bankers should not have rescinded the policy, because Tyler's non-disclosure was not

13  fraudulent but, rather, induced by Bankers's own agent.

14       Bankers does not need to show an actual intent to deceive in order to show

15  fraud under the rescission statute.  Legal fraud will suffice.  "Legal fraud exists if the

16  question asked in an insurance application: (1) is one where the facts are within the

17  personal knowledge of the insured; (2) are such that the insurer would naturally have

18  contemplated that the answers represented the actual facts; and (3) the answers are

19  false."[17]  Questions regarding incidents of drug use elicit fact-based answers, not

20  opinions.  As such, any false answer regarding drug use can be the basis for legal fraud

21  under the rescission statute.[18]  Questions about mental health history answered

22

23       [14]A.R.S. § 20-1109; *see also Smith v. Republic Nat'l Life Ins. Co.*, 483 P.2d 527, 530
24  (Ariz. 1971) (noting that A.R.S. § 20-1109 should be read in the conjunctive).

25       [15]*Mann v. N.Y. Life Ins. & Annuity Corp.*, 222 F. Supp. 2d 1151, 1154 (D. Ariz. 2002).

26       [16]Doc. 45 at p. 7, ¶ 95.

27       [17]*Golden Rule Ins. Co. v. Montgomery*, 435 F. Supp. 2d 980, 990 (D. Ariz. 2006)

28       [18]*Mann*, 222 F. Supp. 2d at 1154.

-5-

incorrectly can also be the basis for legal fraud depending on the wording of the questions and the facts in the record.[19]

It is undisputed that Tyler's life insurance application contained questions regarding his criminal history, prior injuries, depression, and drug use and that the questions were answered incorrectly. However, Tyler's failure to disclose his full history is complicated by McGee's role in completing the application. "Knowledge of an insurance agent is, as a matter of law, knowledge of the insurance company, whether or not the information is actually communicated to the insurance company by its agent."[20] Here, taking Plaintiff's evidence as true, McGee knew some of Tyler's past history when he filled out the life insurance application; he knew that Tyler had a history of DUIs and that he had suffered a broken back. Consequently, McGee must have known that he was falsely answering the qualifying questions. For example, the application asked whether Tyler had been convicted of a crime or DUI. McGee marked "no" even knowing that Tyler was on house arrest for a DUI.[21] There was also a question about whether Tyler had been to a doctor within five years and McGee marked "no" even though Plaintiff disclosed Tyler's prior broken back.[22] McGee's knowledge of the falsity of these answers is therefore imputed to Bankers, and consequently Bankers cannot rely on these incorrect answers as a basis for claiming fraud on the part of the insured.[23]

---

[19]*Stewart v. Mutual of Omaha Ins. Co.*, 817 P.2d 44, 48 (Ariz. Ct. App. 1991).

[20]*Golden Rule,* 435 F. Supp. 2d at 990.

[21]Doc. 41-3 at p. 43 (Exhibit C-3, p. 28).

[22]*Id.*

[23]*Centrust Mortg. Corp. v. PMI Mortg. Ins. Co.*, 800 P.2d 37, 43 (Ariz. Ct. App. 1990) (noting that an insurance company's knowledge of incorrect answers in an insurance application preclude it from claiming fraud on the part of the insured).

1    However, McGee did not know the full extent of Tyler's history.  He was not told
2  about Tyler's drug abuse and history of depression.  There were questions on the form
3  that specifically asked about such topics and were answered falsely.  For example,
4  there was a question asking whether Tyler had used "cocaine, marijuana, heroin,
5  amphetamines, barbiturates, or other drugs except as prescribed by a physician" and a
6  question asking whether he "had or been advised to have treatment or counseling for
7  alcohol or drug abuse."[24]  There was also a question as to whether Tyler had ever
8  consulted a medical professional for drug abuse, depression, or other mental disorder.[25]
9  The answers to these questions, based on the medical record provided, should have
10  been "yes" rather than "no."  McGee technically did not know, and therefore Bankers did
11  not constructively know, the answers to these questions were incorrect.  Nonetheless,
12  Bankers cannot rely on these incorrect answers as a basis for rescission because,
13  taking Plaintiff's evidence as true, McGee did not even ask the Dunfords the qualifying
14  questions.  He told the Dunfords that the application called for background questions,
15  but told them "that everybody deserves a second chance" for life insurance and that the
16  company he worked for gave people that second chance.[26]  Taking all inferences in
17  favor of Plaintiff, he led the Dunfords to believe that he was answering the questions
18  correctly or at least acting within the bounds of company policy.
19    Tyler's signature is on the application and by signing the application he was
20  supposedly verifying that the statements were correct.  Generally, an applicant is under
21  a duty to examine the answers set forth in the application and becomes bound by the
22  answers as recorded if he or she does not subsequently correct them.[27]  However, an
23  insured is not bound by those answers if the insurer's agent fraudulently recorded such

24

25    [24]Doc. 41-3 at p. 43 (Exhibit C-3, p. 28).

26    [25]*Id.*

27    [26]Doc. 45-2 at pp. 11, 21 (Amber Dunford depo. pp. 41, 79).

28    [27]*Stewart v. Mut. of Omaha Ins. Co.*, 817 P.2d 44, 52-53 (Ariz. Ct. App. 1991).

1  answers without the knowledge or collusion of the insured and then induced the insured
2  to sign without reviewing it.[28]  An insured is also not bound if the answers were entered
3  pursuant to an agent's advice, suggestion, or interpretation. [29] Here, Plaintiff stated that
4  McGee provided Tyler an opportunity to review the application, but taking all inferences
5  in favor of Plaintiff, the incorrect answers were provided at the "advice, suggestion, or
6  interpretation" of McGee when he informed him that he could skip background
7  questions.  Therefore, given McGee's conduct, Tyler's signature on the initial
8  application does not allow the court to grant summary judgment in favor of Bankers
9  based on the incorrect answers provided therein.

10        The February meeting with McGee, however, was only a portion of the
11  application process.  It is undisputed that McGee informed the Dunfords that Tyler
12  would have to pass a medical exam as part of the application process.  The exam
13  occurred over a month later, in March of 2013.  It did not involve McGee.  Rather,
14  Melissa Bebee, a medical professional working for a separate company, EMSI,
15  conducted the exam.  The exam consisted in part of another medical history
16  questionnaire.  The questionnaire states that it is "Part II" of the application process and
17  that it consists of "statements to [the] medical examiner."  It directs the paramedical
18  professional to complete the form.[30]  It contains questions about prior drug use and
19  mental health history.  It is undisputed that the questionnaire does not reflect truthful
20  answers to such questions .  For example, the form indicates that Tyler told the
21  paramedical professional that he had never used heroin, morphine, or other narcotics.
22  The form also indicates that Tyler told her that he did not have a history of mental

23
24        [28]*Smith v. Republic Nat'l Life Ins. Co.*, 483 P.2d 527, 532 (1971).

25        [29]*Golden Rule*, 435 F. Supp. 2d at 990-91 ("Although an insured is under a duty to
26  examine answers to determine if they are accurate and complete, an insurer cannot rely
    on incorrectly recorded answers known to the insured, if the incorrect answers were
27  entered pursuant to an agent's advice, suggestion, or interpretation.").

28        [30]Doc. 41-3 at p. 47 (Exhibit C-3 at p. 32).

-8-

disorders.  These were material, false answers, and because the questions are fact-based and not opinion-based, the false answers constitute legal fraud for purposes of rescission.

As noted above, the court cannot impute knowledge to Bankers as to Tyler's past drug use and mental health history because McGee did not know about those specific issues.  Moreover, unlike the situation with the initial application that Tyler signed the month before, there is nothing in the record to suggest that a Bankers's agent was responsible for the false answers on the medical questionnaire, and there is nothing in the record to show that McGee's conduct on the initial application somehow tainted the medical portion of the application process.  That is, there is nothing in the record to show that McGee had anything to do with the subsequent medical exam.  In fact, the record only shows that McGee did not communicate with the paramedical professional who conducted the exam.[31]  Moreover, Plaintiff did not testify that McGee even warned them during their February meeting that there would be questions on the subsequent medical exam, and she did not testify that he advised or suggested that Tyler lie, hide, or skip any prior history questions during the medical exam.  To the contrary, Plaintiff testified during her deposition that she did not think that McGee was suggesting they lie or hide information but, rather, that his company would insure people with DUIs or medical histories.[32]  Tyler also signed the medical questionnaire and by doing so he agreed that the answers provided were correct and that the questionnaire would be considered part of the insurance application.[33]

The medical questionnaire is admissible evidence.  Under A.R.S. § 20-1108 an application for insurance is not admissible unless "a copy of the application was attached to or otherwise made a part of the policy when issued and delivered."  Here,

---

[31]Doc. 41-2 at p. 4 (Clifton McGee depo. p. 46).

[32]Doc. 45-2 at p. 19 (Amber Dunford depo. pp. 83-84).

[33]Doc. 41-3 at p. 48 (Exhibit C-3 at p. 33).

1   Bankers presents evidence to show that the policy packet assembled for the Dunfords

2   included the initial application and the paramedical exam form.[34]  Plaintiff signed for

3   delivery of the policy on or about April 11, 2013.  Therefore, the questionnaire is

4   admissible under A.R.S. § 20-1108.  Under Rule 901(a) of the Federal Rules of

5   Evidence, a party seeking to admit an exhibit need only "produce evidence sufficient to

6   support a finding that the item is what the proponent claims it is."[35]  Evidence sufficient

7   for authentication can be a witness with knowledge, but it does not have to be.

8   Authentication can be found through the distinctive characteristics of the item, taken

9   together with all the circumstances.[36]  Here, a representative for Bankers confirmed that

10  the questionnaire is a Bankers' form and that "when the policy was approved and the

11  policy packet assembled for delivery to the insured, it included the application, as well

12  as a copy of the paramedical examination form."[37]  Thus, there is enough evidence to

13  authenticate the source of the questionnaire.  Plaintiff asserts in her response to

14  Defendant's statement of facts that the questionnaire is not admissible because it

15  constitutes hearsay.  The questionnaire, however, is not being admitted to prove the

16  truth of the matter asserted therein but, rather, to show that Tyler made affirmative

17  misrepresentations about his medical history.

18          During oral argument Plaintiff clarified that she was not challenging the

19  admissibility of the questionnaire when she argued that Bankers did not present any

20  evidence to verify how it was filled out.  Rather, Plaintiff contends that she was

21  questioning the probative value of the questionnaire.  That is, she argues that the jury

22  should weigh the questionnaire along with all the other evidence when determining

23

24          [34]Doc. 41-1 at pp. 3-4 (Rikkers affidavit ¶¶ 17, 25).

25          [35]Fed. R. Evid. 901(a).

26          [36]*Id.* at 901(b)(4); *see also Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 533 (9th
    Cir. 2011) (noting that for purposes of a summary judgment motion documents can be
27  authenticated by review of their contents pursuant to Rule 901(b)(4)).

28          [37]Doc. 41-1 at pp. 3-4 (Rikkers affidavit ¶¶ 17, 25).

1  whether Tyler fraudulently answered insurance application questions.  The court

2  disagrees.  It is undisputed that the medical questionnaire form contains material false

3  answers.  The form was signed by Tyler, and Plaintiff confirms that the signature on the

4  page is indeed Tyler's.[38]  As discussed above, absent some evidence that an agent

5  falsified the answers without the insured's collusion and induced the insured to sign the

6  application or evidence that the incorrect answers were provided at the agent's

7  suggestion, the insured becomes bound by the answers as recorded if he or she does

8  not subsequently correct them.  Unlike the situation with McGee and the initial

9  application, Plaintiff has not provided evidence from which the court could infer that the

10  medical examiner engaged in misconduct when filling out the answers to the medical

11  questionnaire or when obtaining Tyler's signature.  Thus, the signature binds Tyler to

12  the answers in the questionnaire.  Moreover, in addition to the signature, other items on

13  the questionnaire suggest that Tyler himself provided answers to the medical examiner:

14  the questionnaire discloses that Tyler had seen a doctor for a broken wrist (which was

15  not a piece of information provided in the initial application and therefore was not likely

16  filled out by the examiner independently) and lists the age of his immediate family

17  members.  There is nothing on the record calling into doubt the validity of the

18  questionnaire or from which the jury could otherwise infer that Tyler did not commit

19  legal fraud with respect to the medical questionnaire.

20         To the extent Plaintiff argues that the probative value of the questionnaire is

21  lessened when viewed in light of McGee's prior misconduct, the court finds that the

22  medical examination was sufficiently separate from the initial application process.  The

23  only evidence on the issue shows that McGee was not involved in the subsequent

24  medical exam and did not suggest or advise Tyler to hide or falsify answers during the

25  medical exam.  Indeed, as noted above, Plaintiff testified that she did not believe

26  McGee suggested that they lie about his history but, rather, that Bankers would insure

27  _____

28         [38]Doc. 45-2 at p. 16 (Amber Dunford depo. pp. 64-65).

1  someone with Tyler's history.  Bankers has met its burden of showing that Tyler made
2  material, false statements on an insurance application free from the misconduct of
3  McGee.

4       Plaintiff also asks the court to apply the doctrine of reasonable expectations to
5  prevent Bankers from rescinding the life insurance policy.  She argues that since
6  McGee informed the Dunfords that Tyler would be able to get a policy despite his
7  knowledge of Tyler's DUI history and back injuries, McGee created an objective
8  impression of coverage in the mind of a reasonable insured.  Therefore, she argues
9  that Bankers should be bound to cover Tyler's life despite any express policy terms.
10 The reasonable expectations doctrine is inapplicable here.  The doctrine is applied to
11 situations where there is a dispute about the extent of coverage under a policy's
12 standardized terms that customers would not be expected to read and over which they
13 have no real negotiating power.[39]  "Under [the] doctrine, a contract term is not enforced
14 if one party has reason to believe that the other would not have assented to the
15 contract if it had known of that term."[40]  Plaintiff does not cite a case where the doctrine
16 has been applied to a situation like the one presented here.

### V. CONCLUSION

18      Based on the preceding discussion, Defendant's motion for summary judgment
19 is GRANTED.  Plaintiff's complaint is dismissed, and the clerk is directed to close the
20 case.

21      DATED this 26th day of August 2016.

23                          /s/ JOHN W. SEDWICK
                   SENIOR JUDGE, UNITED STATES DISTRICT COURT

---

27 [39]*First Am. Title Ins. Co. v. Action Acquisitions, LLC*, 187 P.3d 1107, 1113 (Ariz. 2008)
28 [40]*Id.*

-12-